FARM BUREAU TOWN AND COUNTRY
INSURANCE COMPANY OF
MISSOURI, Appellant,

v.

Jay ANGOFF, Director, Department
of Insurance, Respondent,

and

Jeremiah W. Nixon, Attorney General,
Intervenor–Respondent.

No. 77607.

Supreme Court of Missouri,
En Banc.

Oct. 24, 1995.

Rehearing Denied Nov. 21, 1995.

Kent L. Brown, Ronald R. McMillin, Jefferson City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John R. Munich, Norbert Glassl, Asst. Attys. Gen., Jefferson City, for intervenor-respondent.

Mark W. Stahlhuth, Mo. Dept. of Insurance, Jefferson City, for respondent.

Patrick Watts, Kansas City, for amicus curiae National Association of Insurance Commissioners.

HOLSTEIN, Chief Justice.

Farm Bureau Town and Country Insurance Company (T & C) appeals from the dismissal of its four-count petition against the Director of the Department of Insurance. Among other related claims, each count presents a variation on the theme that §§ 375.007, 375.934, and portions of § 375.936(11), are unconstitutional.[1] Because of the constitutional claims, the attorney general intervened. The claimed constitutional invalidity of the statutes gives this Court jurisdiction. *Mo. Const. art. V, § 3.* The judgment is affirmed in part and reversed in part.

## I.

Section 375.007 provides in part:

No insurer shall cancel or refuse to write ... a policy solely because of the ... place of residence ... of anyone who is or seeks to become insured....

Section 375.934 provides:

It is an unfair trade practice for any insurer to commit any practice defined in section 375.936 if:

(1) It is committed in conscious disregard of sections 375.930 to 375.948 or of any rules promulgated under sections 375.930 to 375.948; or

(2) It has been committed with such frequency to indicate a general business practice to engage in that type of conduct.

The relevant portions of § 375.936 provide:

Any of the following practices ... are hereby defined as unfair trade practices in the business of insurance:

....

(11) **"Unfair discrimination":**

....

(c) Making or permitting any unfair discrimination between individuals or risks of the same class and of essentially the same hazards by refusing to issue, refusing to renew, canceling or limiting the amount of

1. References to statutes are to RSMo 1994, unless otherwise noted.

insurance coverage on property or casualty risk because of the geographic location of the risk;

. . . .

(i) The provisions of paragraph[ ] (c), ... of this subdivision shall not apply if:

a. The refusal, cancellation, limitation, termination or modification is for a business purpose which is not a mere pretext for unfair discrimination. . . .

There are apparently no criminal sanctions imposed for engaging in "unfair discrimination" by an insurer. Rather, the above provisions are enforced by an administrative disciplinary proceeding. The administrative process begins with an investigation by the director. *§ 375.938.* If the director has reason to believe that the insurer has been engaged in any unfair practice, a statement of charges is issued to the insurer setting a hearing to show cause why the insurer should not cease and desist from the acts alleged. *§ 375.940.* Following the administrative hearing, if it is determined that the person charged has engaged in any unfair practice, the director must issue an order requiring the insurer to cease and desist from the activity and, in addition, the director may order the payment of a monetary penalty or the suspension or revocation of the insurer's license. *§ 375.942.* That determination is then subject to judicial review. *§ 375.944.*

### II.

On November 12, 1993, T & C was notified that the director intended to begin an administrative disciplinary action based on T & C's alleged refusal to write policies within certain geographical areas of the state. T & C filed its petition for declaratory judgment against the director on December 9, 1993. The director responded by filing a motion to dismiss on January 12, 1994. On that same date, the director issued a statement of charges in the administrative process pursuant to § 375.940. The statement alleges

three specific instances in which T & C unfairly discriminated in violation of the Missouri Unfair Trade Practice Act, §§ 375.930–948. Preliminary injunctive relief was granted by the circuit court prohibiting the director from proceeding with the administrative action.

The director and attorney general moved to dismiss T & C's petition because T & C had failed to exhaust its administrative remedies and because the petition failed to state any claim upon which relief could be granted. On December 8, 1994, the trial court granted the motions to dismiss. The order also found that §§ 375.007, 375.934, and 375.936(11)(c) and (i) are not facially unconstitutional.

### III.

When reviewing the dismissal of a petition, the pleading is granted its broadest intendment, all facts alleged are treated as true, and it is construed favorably to the plaintiff to determine whether the averments invoke substantive principles of law which entitle the plaintiff to relief. *Hagely v. Board of Educ. of the Webster Groves Sch. Dist.,* 841 S.W.2d 663, 665 (Mo. banc 1992). If the motion to dismiss should have been sustained on any meritorious ground alleged in the motion, the ruling of the trial court will be affirmed. *Spearman v. University City Pub. Sch. Dist.,* 617 S.W.2d 68, 72 (Mo. banc 1981).

T & C's petition alleges that its bylaws mandate membership in a county farm bureau as a condition precedent to be eligible for insurance, and that no county farm bureau exists in the City of St. Louis. County farm bureaus "were formed over the years by persons within a county interested in agriculture." [2]

T & C asserts that the director of insurance was, when this action was filed, about to commence proceedings against it and thereafter actually did commence administrative

---

2. No count of the petition discloses whether a county farm bureau member must reside in a county with a farm bureau or whether ownership of property in a county with a farm bureau is required for membership. In addition, it is not disclosed whether a member of a county farm bureau owning property in the City of St. Louis may insure that property with T & C. In sum, T & C alleges a dispute as to whether it refuses to insure risks or residents in some counties, but it stops short of specifically admitting it engages in such practices in any count.

proceedings against it to require it to "actively offer" insurance in major metropolitan areas in violation of its "chosen market and marketing philosophy." It asserts that the director's action is improper because T & C has a legitimate business purpose for its practices, as permitted under the statute. T & C further asserts that the director's action is improper because it denies T & C equal protection and due process of law in that the director is selectively enforcing §§ 375.007, 375.934, and 375.936(11)(c) and (i) by proceeding against it but not against insurers that market primarily in metropolitan areas. T & C claims the statutes violate due process because of vagueness, in that persons of ordinary intelligence must speculate as to the meaning of those statutes. T & C finally asserts that the statutes are unconstitutional because they appropriate the property of T & C for public use without due process of law or compensation, as required by the Fourteenth Amendment of the United States Constitution and article I, § 10 of the Missouri Constitution. T & C alleges that it has no adequate remedy to protect its rights.

Without specifically admitting in any count that it has refused to insure any risk or person because of geographic location, T & C seeks a declaratory judgment that it not be required to provide insurance coverage to persons residing in those areas of the state which it has decided not to serve and that the director does not have jurisdiction to compel T & C to write policies in such geographical areas. The petition further seeks injunctive relief against the director from attempting to compel T & C to "offer insurance to residents of geographical areas which it has determined not to serve." The petition also seeks a writ of prohibition against the administrative proceeding.

The trial court entered an order finding that §§ 375.007, 375.934 and 375.936(11)(c) and (i) are constitutional on their face and that all other claims were premature. The motion to dismiss was sustained. This appeal followed.

### IV.

The exhaustion of administrative remedies doctrine is rooted in sound policy, as well as in both the state constitution and statutes. Only "final decisions, findings, rules and orders" of an administrative agency are subject to review as provided by law. *Mo. Const. art. V, § 18.* The relevant statute, § 536.100, provides for judicial review only by a "person who has exhausted all administrative remedies provided by law and who is aggrieved by a final decision in a contested case."

The policy reasons for the exhaustion doctrine are clear.

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

*Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975).

Exhaustion of administrative remedies is often said to be a jurisdictional prerequisite to a declaratory judgment action. *State ex rel. Missouri State Board of Registration for the Healing Arts v. Hartenbach,* 768 S.W.2d 657, 659 (Mo.App.1989); *State ex rel. J.S. Alberici, Inc. v. City of Fenton,* 576 S.W.2d 574, 577 (Mo.App.1979); *see also Green v. City of St. Louis,* 870 S.W.2d 794, 796 (Mo. banc 1994) ("The rule requiring exhaustion of administrative remedies is one of subject matter jurisdiction.") All of these statements of the rule presuppose an adequate administrative remedy.

■ T & C is correct in its assertion that the circuit court of Cole County has jurisdiction to grant declaratory judgment on the constitutionality of the statutes in question. *§ 527.010.* However, a declaratory judgment is not available to adjudicate hypothetical or speculative situations which may never come to pass. To be ripe for declaratory judgment, a justiciable controversy must exist. *Tintera v. Planned Indus. Expansion Auth.,* 459 S.W.2d 356, 358 (Mo.1970); *Commonwealth Ins. Agency, Inc. v. Arnold,* 389 S.W.2d 803, 806 (Mo.1965); *see also Local Union 1287 v. Kansas City Area Transp.*

*Auth.*, 848 S.W.2d 462, 463–64 (Mo. banc 1993). Until an agency has made a final determination that finds facts, applies the law to those facts, and construes the applicable statutes, it is impossible to know if a subsisting justiciable controversy exists between the agency and the party seeking declaratory relief. Prior to the agency's decision, the controversy remains hypothetical and premature. Declaratory judgment actions should not be resorted to for the purpose of giving advisory opinions.

■ In sum, the existence of jurisdiction to grant a declaratory judgment does not invalidate other obstacles to the granting of judicial relief. If administrative remedies are adequate, they must be exhausted before declaratory relief may be granted.

.

#### A.

■ Nevertheless, there are exceptional circumstances where declaratory relief may be granted against an agency without exhaustion of the administrative remedies. The exceptions are usually characterized by the inadequacy of the administrative remedy. Unreasonable delay by the agency in deciding the issues in an administrative proceeding authorizes the court to proceed to compel agency action or remove the case to the court for decision. § *536.100.* Here there is no claim that the agency unreasonably delayed making any decision.

#### B.

■ Where there is a constitutional challenge to a statute which forms the *only* basis for granting declaratory judgment, exhaustion of administrative remedies is not required. *Boot Heel Nursing Ctr., Inc. v. Missouri Dept. of Social Serv.*, 826 S.W.2d 14, 16 (Mo.App.1992); *Hartenbach,* 768 S.W.2d at 659. A similar exception exists when the *only* issue is whether a city ordinance is invalid because the ordinance is not authorized by law. *See Nicolai v. City of St. Louis,* 762 S.W.2d 423, 425–26 (Mo. banc 1988) (where there were no disputed facts and the issue was purely a legal one, the court should declare whether the ordinance was valid.) It is argued that Count IV of the petition raises only direct constitutional challenges to the statutes. However, the constitutional claims, including those in Count IV, are mixed with other claims involving construction of statutes and factual issues essential to determining whether T & C has violated the statutes which it claims to be unconstitutional. Of course, if T & C did not violate the statutes, the constitutional questions need not be reached. The constitutionality of the statute will not be decided unless essential to a disposition of the case. *Juengel v. City of Glendale,* 161 S.W.2d 408, 409 (Mo.1942). Among facts not conceded in any count are the questions of whether a property owner or a resident of the City of St. Louis may become a member of a county farm bureau, whether T & C will sell insurance to any farm bureau member, even though the risk is located in the City of St. Louis, and whether T & C's practices have no legitimate business purpose. Disposition of these fact issues and related questions of statutory construction may well make the constitutional issues moot. Constitutional issues in this case may be preserved and raised during the judicial review portion of the administrative proceeding. The administrative review process is not shown to be inadequate.

■ Where constitutional questions are presented in a petition or a discrete count without the encumbrance of factual dispute, or when a claim is made that under no circumstance or construction may a statute be constitutionally applied to the plaintiff, judicial intervention may be appropriate notwithstanding failure to exhaust administrative remedies. However, even under Count IV, which was added after commencement of the administrative proceedings, the plaintiff stopped short of squarely admitting or denying that it had engaged in the alleged discriminatory practices which the statement of charges adduces as statutory violations, or of asserting that the governing statutes are unconstitutional under any conceivable construction. There was no attempt to further amend the petition following the trial court's ruling. Thus, prior resort to the administrative proceedings may not be excused under *Nicolai.*

### C.

Another exception to the exhaustion of administrative remedies doctrine arises where the applicable administrative procedure must be commenced by the agency and the agency has failed to commence any proceeding. A party threatened by agency action may invoke the court's jurisdiction to grant declaratory judgment against the agency. *Group Health Plan, Inc. v. State Bd. of Registration for the Healing Arts,* 787 S.W.2d 745, 748 (Mo.App.1990); *see also Sermchief v. Gonzales,* 660 S.W.2d 683, 685 (Mo. banc 1983). However, once the administrative procedure is commenced by the agency, the exhaustion of administrative remedies doctrine is a compelling reason for the court to terminate the declaratory judgment action unless the action has advanced to a point that dismissal will result in undue delay or where for some other reason the administrative remedy is inadequate. Here no answer has been filed and no discovery undertaken by the agency in the court action. The court case has not been set for trial. Just over thirty days elapsed from the filing of the court action until commencement of the threatened administrative proceeding. Because there was no substantial advancement of the court case, there was no undue agency delay in commencing the administrative proceeding.

T & C argues that *Group Health* would require the trial court to proceed in the declaratory judgment action notwithstanding the commencement of the agency proceeding. *Group Health* only held that the trial court had jurisdiction to proceed when agency action was threatened; it did not speak to whether the case should continue after agency action was commenced. If T & C's reading of *Group Health* were correct, those threatened with agency action who win a race to the courthouse would be able to bypass a mandated administrative procedure. The remedy provided for in the declaratory judgment act was not intended to defeat the requirement that adequate administrative remedies be exhausted.

### D.

T & C also seeks injunctive relief against the director's enforcement of §§ 375.007, 375.934, and 375.936(11)(c) and (i). An injunction is an extraordinary and harsh remedy and should not be employed where there is an adequate remedy at law. *Harris v. Union Electric Co.,* 766 S.W.2d 80, 86 (Mo. banc 1989). Even though a claim for injunctive relief is founded on violations of constitutional rights, there remains the necessity of showing irreparable injury. *Allee v. Medrano,* 416 U.S. 802, 815, 94 S.Ct. 2191, 2200, 40 L.Ed.2d 566 (1974). In this case, T & C may preserve its constitutional claims in the administrative proceeding and the administrative proceeding affords T & C a full and fair opportunity to develop any disputed facts. No irreparable harm is apparent from requiring T & C to exhaust administrative remedies.

Nevertheless, T & C argues that under the Civil Rights Act, Title 42 U.S.C. §§ 1983 and 1988, it is entitled to declaratory and injunctive relief. Generally, state administrative review need not be exhausted before a § 1983 claim may be brought in state or federal courts. *Patsy v. Board of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982); *Strictly Pediatrics, Inc. v. Developmental Habilitation Assocs., Inc.,* 820 S.W.2d 731, 732 (Mo.App. 1991).

In *Patsy,* the petitioner alleged that she had been rejected for thirteen positions at Florida International University based on her race and sex. She sought declaratory relief, injunctive relief and damages. There the available administrative proceeding was not coercive but remedial in nature. The violation of plaintiff's rights in *Patsy* was complete when she was denied employment. Thus, her right to a remedy under § 1983 could not be made dependent on the outcome of a concurrent remedial proceeding. Neither could it be said in *Patsy* that the state had an important interest at stake in requiring the plaintiff to exhaust the administrative remedy as a precondition to pursuing the remedy provided by Congress under the federal statute.

In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme

Court held that a federal court should not enjoin pending state criminal proceedings except in the very unusual situation that an injunction is necessary to prevent great and immediate irreparable injury. That principle was later applied to prevent a federal court from granting an injunction under § 1983 prohibiting state administrative proceedings in which important state interests were vindicated so long as in the course of those proceedings the plaintiff had a full and fair opportunity to litigate the constitutional claims. *Ohio Civil Rights Com'n v. Dayton Christian Schools*, 477 U.S. 619, 627, 106 S.Ct. 2718, 2723, 91 L.Ed.2d 512 (1986). In *Ohio Civil Rights Commission*, the court noted that the *Younger* principle was still viable and not inconsistent with the rule in *Patsy*, provided the state's administrative proceedings are coercive rather than remedial, that the administrative action began before any substantial advancement in the federal § 1983 action took place, and the administrative action involved an important state interest. 477 U.S. at 627, n. 2, 106 S.Ct. at 2723, n. 2.

 Here the proceedings are clearly coercive, the administrative action began before the issues were joined in the § 1983 action, and Missouri has an important interest in preventing unfair discrimination by licensed insurance companies. In addition, the constitutional issues may be preserved before the administrative agency and litigated by way of judicial review. Applying the *Younger* principle, as reiterated in *Ohio Civil Rights Commission*, the remedy of injunction pursuant to § 1983 may not be relied on to impede the administrative proceeding.

## V.

 Count III of T & C's petition requests a writ of prohibition to prevent the director from proceeding in the administrative action. T & C claims that Count III states a cause of action for writ of prohibition. The trial court dismissed the petition. The proper remedy to contest the dismissal of a petition for writ of prohibition is a request for a writ from a higher court. *State ex rel. Stoecker v. Director of Revenue*, 734 S.W.2d 263, 266 (Mo.App.1987); *see also*

*State ex rel. Griffith v. Bowerman*, 40 Mo. App. 576, 577–78 (1890). The appeal of that claim is dismissed.

## VI.

 From the above, it appears that the director's motion to dismiss based on failure to exhaust administrative remedies was properly sustained. Sustaining that motion, however, is inconsistent with the trial court's finding the statutes constitutional. As noted above, constitutional issues should not be addressed unless factual issues and issues of statutory construction are resolved. Also, the constitutional issues should not be resolved unless essential to the court's decision. That portion of the trial court's judgment purporting to declare certain provisions of Chapter 375 constitutional is premature and must be reversed.

## CONCLUSION

Insofar as the judgment dismisses the petition for failure to exhaust administrative remedies, it is affirmed. That portion declaring sections 375.007, 375.534 and 375.936(11)(c) and (i) constitutional is reversed. Cause remanded to the trial court for entry of judgment consistent with this opinion.

BENTON, PRICE, LIMBAUGH and COVINGTON, JJ., GARRISON, Special Judge, and BLACKMAR, Senior Judge, concur.

ROBERTSON, J., not sitting.