STATE, EX REL. MISSOURI PARKS ASSOCIATION, Village of Arrow Rock and Friends of Arrow Rock, Respondents,

v.

MISSOURI DEPARTMENT OF NATIONAL RESOURCES, et al., Missouri Farm Bureau Federation, Missouri Cattlemen's Association, Missouri Dairy Association, Missouri Pork Producers Association, and Missouri Egg Council, Appellants.

Nos. WD 70564, WD 70565, WD 70787.

Missouri Court of Appeals,
Western District.

April 6, 2010.

Application for Transfer Denied
Aug. 31, 2010.

Richard W. Miller, Kansas City, MO, for respondents.

Timothy P. Duggan, Dana L. Frese, Robert J. Brundage and Mark W. Comley, Jefferson City, MO, for appellants.

Before Division Four: THOMAS H. NEWTON, Chief Judge, Presiding, JAMES M. SMART, JR., Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

The Missouri Department of Natural Resources and its Director, Mark N. Templeton, (collectively, hereinafter, "DNR") appeal the trial court's grant of summary judgment in favor of Missouri Parks Association, the Village of Arrow Rock, and Friends of Arrow Rock (collectively, hereinafter, "MPA") and against DNR. Missouri Farm Bureau Federation ("Farm Bureau") and Missouri Cattlemen's Associ-

ation, Missouri Dairy Association, Missouri Pork Producers Association, and Missouri Egg Council (collectively, hereinafter, "Cattlemen") appeal the trial court's denial of their motions to intervene and the trial court's grant of summary judgment in favor of MPA.

DNR requests that we vacate the trial court's judgment because: (1) the matter the trial court was asked to address was moot at the time of entry of the judgment from which this appeal is taken; (2) the trial court's judgment is advisory or hypothetical because it adjudicates future controversies and permits for which no one has applied; (3) the trial court's judgment usurps statutes that specifically govern air pollution control, concentrated animal feeding operations (CAFO) permitting, and use of manure in crop fields; (4) the matter addressed by the trial court's judgment was not ripe because MPA did not exhaust available administrative remedies; and (5) the use of admissions to the detriment of nonparties is not authorized by Supreme Court Rule 59.01.

Farm Bureau and Cattlemen appeal separately. Both allege that the trial court erred in: (1) denying their respective motion's to intervene; (2) entering the judgment because the matter before the trial court was moot; (3) entering the judgment because MPA failed to exhaust administrative remedies; (4) entering a judgment that exceeds the relief initially requested and that affects the rights of nonparties; and (5) prohibiting a CAFO within a buffer radius that directly contradicts section 640.710.2,[1] which expressly provides for buffer distances. We vacate the Second Amended Judgment and order this matter dismissed with costs to Respondents.

### Factual and Procedural History

On August 31, 2007, DNR issued to Dennis Gessling ("Gessling") a one-year construction permit that authorized construction of a CAFO for 4,800 hogs in Saline County, Missouri, near the Village of Arrow Rock. DNR issued the permit pursuant to its authority under the Clean Water Law, Chapter 644, and the "Hog Bill," sections 640.700 through 640.755. The permit automatically expired on August 30, 2008. A petition was filed with the Administrative Hearing Commission ("AHC") to initiate an appeal to the Missouri Clean Water Commission ("CWC"). One of the Respondents, Friends of Arrow Rock, is a party to the appeal challenging the permit.

On October 11, 2007, and while administrative review of the issuance of the permit remained pending, MPA filed a petition for declaratory judgment and mandamus in the Circuit Court of Cole County. The petition named DNR and its then Director as the Defendants. Gessling was not named as a Defendant. The petition alleged that Arrow Rock is identified as a distinctive destination by the National Trust for Historic Preservation and is home to numerous historic buildings. The petition also alleged that Sappington Cemetery State Historic Site and two other landmarks listed on the National Register of Historic Places are in or near Arrow Rock. Count I of the petition sought a judgment declaring that DNR must revoke Gessling's construction permit because odors and pollutants from a CAFO would threaten the health and welfare of those near Arrow Rock, and because DNR has a duty to protect and preserve state parks and state historic sites. Count II of the petition sought a preliminary order in mandamus commanding DNR's Director to perform a purported duty to preserve and protect state parks and historic sites

---

**1.** All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

and declaring that "the issuance of the permit *and any similar CAFO permit* would be an abrogation" of said duties. (Emphasis added.)

On May 19, 2008, MPA served 149 requests for admissions on DNR. On June 19, 2008, one day after DNR's responses to the requests were due, DNR filed a motion for an extension of time to respond to the requests for admissions. On June 20, 2008, DNR filed objections to the requests for admissions alleging, among other things, that the sheer number of requests was burdensome and that many of the requests expressed subjective impressions and opinions which could not be truthfully admitted or denied, contained legal conclusions and opinions, sought admissions on matters or opinions espoused by third parties which could not be truthfully admitted or denied, or were compound statements.

On June 30, 2008, MPA filed a motion for summary judgment. The motion for summary judgment asserted as an "uncontroverted fact" service of the requests for admission on DNR. All of the remaining "uncontroverted facts" asserted in the motion for summary judgment were drawn verbatim from the requests for admissions. DNR's motion for extension of time to respond to, and objections to, the requests for admissions were still pending at the time the motion for summary judgment was filed. DNR did file suggestions in opposition to MPA's motion for summary judgment and responded to each of MPA's alleged "uncontroverted facts," contesting the uncontroverted nature of most of them.

On August 25, 2008, five days before Gessling's construction permit was set to naturally expire, the trial court entered a judgment (hereinafter "Initial Judgment").

The Initial Judgment declared that DNR had not shown sufficient cause to be afforded an extension of time to respond to the requests for admission. Pursuant to Rule 59.01(a), the trial court deemed the 149 requests admitted. The Initial Judgment then granted summary judgment. To do so, the Initial Judgment necessarily relied on the deemed admissions, notwithstanding the fact that DNR had filed a response to the motion for summary judgment controverting most of MPA's contentions. In the Initial Judgment, the trial court made numerous "findings of fact," each cross referenced to a nearly identical request for admission. The Initial Judgment then entered numerous "conclusions of law," the vast majority of which were cross referenced to a nearly verbatim request for admission.[2]

The Initial Judgment entered judgment in favor of MPA and against DNR "on all claims set forth in the Petition." Specifically, the Initial Judgment declared (a) DNR has a constitutional duty to protect state parks and historic sites; (b) *a CAFO, including the proposed Gessling CAFO,* should not be allowed within a fifteen mile radius of Arrow Rock or any "nearby" state parks and historic sites and that *"no CAFO" can transport waste* from its operation within a fifteen mile radius of Arrow Rock and "nearby" state parks and historic sites; (c) that DNR must revoke Gessling's permit because of odor and pollutant concerns threatening those around Arrow Rock; and (d) that failure to revoke Gessling's permit would permit DNR to avoid its duty to protect state parks and historic sites. The Initial Judgment then entered a Writ of Mandamus commanding DNR to revoke Gess-

---

**2.** Requests for admissions are limited by Rule 59.01 to the admission of facts, not legal principles or conclusions. The trial court's reliance on requests for admissions to support conclusions of law in the Initial Judgment evidences the objectionable nature of many of the requests for admissions.

ling's permit and prohibiting DNR from "issuing any such permit to Gessling *or anyone else* " to construct or operate a CAFO within a distance of at least a fifteen mile radius from Arrow Rock and nearby state parks and historic sites, or to permit transporting of CAFO waste within the same radius. (Emphasis added.) Though the Initial Judgment established a fifteen mile buffer radius, a buffer radius was not sought as relief in MPA's petition, and none of the "uncontroverted facts" in MPA's summary judgment motion addressed a buffer radius. The record reveals no evidence of any kind was before the trial court supporting the establishment of a buffer radius of any dimension, and certainly no evidence to support a buffer radius of fifteen miles.

The Initial Judgment then described two scenarios over which the trial court would exercise continuing jurisdiction—relief not sought by MPA's petition or by the motion for summary judgment. First, the trial court declared its belief that CAFO's located beyond the fifteen mile radius it had established could nonetheless harm Arrow Rock and nearby state parks and historic sites. As such, the trial court summarily ordered that "this Court shall maintain jurisdiction over *any such application* [referring to any application for a CAFO beyond the fifteen mile radius] for a permit to construct or operate or both a Concentrated Animal Feeding Operation in order to consider the issuance of such a permit and to hear any objections to the issuance of a permit." Second, the trial court declared:

> If dangerous pollutants or odor or both *from Concentrated Animal Feeding Operations* reach or threaten to reach those areas [referring to Arrow Rock and nearby state parks and historic sites] and since DNR and its Director have a history of failing to honor and enforce Stay Orders issued by the Administrative Hearing Commission as to such situations, then this Court shall retain jurisdiction of this matter to ensure that the DNR and its Director take immediate steps to shut down and [sic] *such offending Concentrated Animal Feeding Operations* until positive, adequate steps are taken that ensure such will not occur or reoccur.

(Emphasis added.)

On August 30, 2008, Gessling's construction permit expired. Gessling never commenced construction of the CAFO covered by the permit. Gessling did not apply for an extension of the permit. Gessling cannot construct a CAFO without a permit.

On September 23, 2008, DNR filed a motion to vacate and set aside the Initial Judgment, arguing Gessling's permit had expired, rendering the action moot. In the alternative, DNR sought to reopen the case, arguing, among other things, that MPA had failed to join indispensible parties and that the trial court had erroneously imposed a fifteen mile buffer radius and had entered orders affecting nonparties. On the same day, Farm Bureau and Cattlemen filed motions to intervene.

On December 9, 2008, the trial court entered an amended judgment ("First Amended Judgment"). The First Amended Judgment was substantively identical to the Initial Judgment except: (a) all references to a fifteen mile buffer radius were changed to a two mile buffer radius; (b) the motions to intervene filed by Farm Bureau and Cattlemen were denied; (c) the trial court added a finding of fact addressing DNR's claim of mootness, finding that Gessling was petitioning to transfer "his operating permit which expired on August 30, 2008 to his company name"; (d) the trial court added a conclusion of law, stating that "if such transfer is permitted," the same threats that had warranted the

Initial Judgment could occur, causing the trial court to "decline to rule the instant lawsuit is moot"; (e) the trial court deleted the first of the two circumstances over which the trial court had summarily asserted an entitlement to exert "continuing jurisdiction"; and (f) the trial court slightly modified the scope of its orders to delete reference to "a CAFO," "no CAFO," or "anyone else," which references had suggested application of those portions of the Initial Judgment to CAFO's other than the one authorized by the specific construction permit issued to Gessling. However, the First Amended Judgment retained the language relating to the trial court's purported continuing jurisdiction to address "dangerous pollutants or odors" from unspecified CAFO's threatening Arrow Rock and specified state parks and historic sites, and ordering DNR to take immediate steps to shut down "such offending Concentrated Animal Feeding Operations." Before the First Amended Judgment was entered, no evidentiary hearing was conducted and no other motion for summary judgment was filed to support the trial court's new finding of fact about an alleged attempt by Gessling to transfer the subject construction permit.

On December 22, 2008, MPA filed a motion asking the trial court to clarify the First Amended Judgment to correct a typographical error and to add specific reference in various paragraphs of the judgment to two additional historic facilities that had been addressed in the requests for admissions and the motion for summary judgment.

On January 9, 2009, the trial court again entered an amended judgment ("Second Amended Judgment"). The Second Amended Judgment was substantively identical to the First Amended Judgment except: (a) all of the "clarifications" sought by MPA in its December 29, 2008 motion were incorporated; and (b) the trial court added a new final paragraph as follows:

The Court has been advised by counsel for Defendants that there presently exists Concentrated Animal Feeding Operations within a two (2) mile radius from the Village of Arrow Rock, Arrow Rock State historic Site, the Sappington Cemetery State Historic Site and the National Register–Listed Prairie Park and this Second Amended Judgment shall not be construed to prevent each such Concentrated Animal Feeding Operation from operating as each was operating prior to the entry of the initial Judgment on August 25, 2008; but each such Concentrated Animal Feeding Operation *shall be conscious of protecting the environment and the water* and *shall not be entitled to amplify, expand or enlarge how it was conducting its Concentrated Animal Feeding Operation beyond what each was doing prior to the entry of this initial judgment on August 25, 2008.*

(Emphasis added.)

DNR filed a notice of appeal. The notice of appeal purports to take an appeal from the First Amended Judgment and the Second Amended Judgment. Farm Bureau and Cattlemen also filed notices of appeal from the First Amended Judgment and the Second Amended Judgment.

### Judgment Appealed From

As a preliminary matter, we must determine whether the First Amended Judgment or the Second Amended Judgment is the appropriate subject of this appeal. The trial court's authority to enter amended judgments is a question of law which we review *de novo. In re Marriage of Jeffrey,* 53 S.W.3d 173, 175 (Mo. App. E.D.2001).

"Unless an amended judgment shall otherwise specify, an amended judgment shall

be deemed a new judgment for *all purposes*," including the time from which a party can file an authorized post-trial motion from the amended judgment. Rule 78.07(d) (emphasis added); *Cotter v. Miller*, 54 S.W.3d 691, 694 (Mo.App. W.D. 2001). Neither the First Amended Judgment nor the Second Amended Judgment included language suggesting the trial court intended the preceding judgment to survive. In fact, the successively entered judgments are virtually identical to one another, save the few deletions or insertions we have herein noted, suggesting each successive judgment was intended to replace, in its entirety, the preceding judgment. Thus, subject to discussion of the timeliness of each judgment's entry, the Initial Judgment was rendered a nullity with the entry of the First Amended Judgment, and the First Amended Judgment was rendered a nullity with the entry of the Second Amended Judgment. Rule 78.07(d); *Investors Title Co. v. Chicago Title Ins. Co.*, 18 S.W.3d 70, 74 (Mo.App. E.D.2000) ("[T]he original judgment quite simply is not the trial court's judgment ... the trial court's judgment is the amended judgment....").

■ The caveat to this principle depends on whether the trial court was authorized to enter either the First Amended Judgment or the Second Amended Judgment. Both amended judgments were entered more than thirty days after entry of the preceding judgment, and thus after the trial court lost the authority to vacate, reopen, correct, amend, or modify the preceding judgment under Rule 75.01. However, Rule 73.01(d) permits (though it does not require except as mandated by Rule 78.07(c)) the filing of "a motion for new trial or a motion to amend the judgment or opinion, or both, as provided by Rule 78.04" in a court tried case. If no such after-trial motion is filed, the judgment

becomes final at the expiration of thirty days after its entry. Rule 81.05(a)(1). If a timely motion for new trial or motion to amend the judgment is filed, however, Rule 81.05(a)(2)(A) permits the trial court up to ninety days from the date the motion was filed to rule on the motion, after which the motion is deemed denied. If an authorized after-trial motion is filed, the judgment is deemed final for purposes of appeal on the day the motion is denied or deemed denied. Rule 81.05(a)(2)(A) and (B). The combined effect of these Rules is to afford the trial court the authority to modify its judgment for any reason for good cause within thirty days of its entry, and the authority between the thirty-first and ninetieth day following entry of a judgment to modify its judgment to remediate a matter raised by a party in an authorized after-trial motion. *Massman Constr. Co. v. Highway & Transp. Comm'n*, 914 S.W.2d 801, 802 (Mo. banc 1996).

■ Following entry of the Initial Judgment, DNR filed a motion to vacate the judgment or to reopen the case. Following entry of the First Amended Judgment, MPA filed a motion to clarify the judgment. Neither motion is titled "motion for new trial" or "motion to amend judgment." However, in evaluating whether a pleading is an authorized after-trial motion, we do not concern ourselves with the title of the pleading or with a party's citation to a particular Rule, but we look instead to the substance of the pleading. *Blue Ridge Bank & Trust Co. v. Hart*, 152 S.W.3d 420, 425 (Mo.App. W.D.2005).

DNR's motion alleges the Initial Judgment should be vacated as moot or in the alternative modified or the matter reopened because there was no basis for the trial court to impose a fifteen mile buffer radius on all CAFO operations or to incorporate into its judgment numerous conclu-

sions of law and orders which impact permits, applicants, and CAFO's other than the specific construction permit issued by DNR to Gessling. DNR's motion is tantamount to a motion to amend or for new trial. *Taylor v. United Parcel Serv., Inc.*, 854 S.W.2d 390, 393 (Mo. banc 1993) (motion titled "Motion to Reconsider the Order of the Court Granting Defendant's Motion for Summary Judgment" treated as a motion for new trial). MPA's motion to clarify the judgment alleges errors in the language of the First Amended Judgment and is tantamount to a motion to amend the judgment. *See Worley v. Worley*, 19 S.W.3d 127, 129 (Mo. banc 2000) ("A pleading is judged by its subject matter-not its caption.") Thus, both DNR and MPA filed after-trial motions expressly authorized by Rule 73.01(d). In fact, to the extent either motion alleged error in the form or language of the trial court's judgment, Rule 78.07(c) required the allegations to be raised as a condition of preserving the issue for appellate review.

Because DNR and MPA each filed authorized after-trial motions, the trial court had the general authority to enter the First Amended Judgment and the Second Amended Judgment as both, though entered more than thirty days after entry of the judgment each amended, were entered within ninety days of the filing of the authorized after-trial motion. Here, though the trial court did not enter separate orders granting or denying DNR's or MPA's after-trial motions, it is evident from review of both the First Amended Judgment and the Second Amended Judgment that most of the modifications to

each judgment were responsive to the pending motions.[3]

The First Amended Judgment expressed the trial court's declination to treat the matter before it as moot and can be construed as a denial of that aspect of DNR's after-trial motion. The First Amended Judgment seemingly "reopened" the case to address DNR's concern with the fifteen mile buffer radius and the Initial Judgment's impact on nonparties, as the First Amended Judgment summarily modified the buffer radius to two miles and deleted some (but not all) of the language in the judgment which applied to other CAFO's or permit applications. The trial court apparently took advantage of DNR's request to "reopen" the case to add a finding of fact and a conclusion of law addressing Gessling's efforts to transfer the permit to bolster the trial court's denial of DNR's motion to vacate the Initial Judgment for mootness.[4]

The Second Amended Judgment made each of the "clarifications" to the First Amended Judgment sought by MPA and can be construed to have granted MPA's after-trial motion. However, the Second Amended Judgment also added a new "order" as its final paragraph, acknowledging existing CAFO's within the two mile buffer radius established by the Second Amended Judgment and ordering that said CAFO's "shall be conscious of" the environment and "shall not be entitled to amplify, expand or enlarge" beyond current operations. This "relief" was not sought in any pending after-trial motion and constitutes an unauthorized modification to the First

---

3. Some modifications went beyond the pending after-trial motions, however, and for reasons we will hereinafter discuss, any such modifications were made by the trial court without authority.

4. Though the trial court had the authority to reopen the case, the trial court did not have the authority to summarily modify its Initial Judgment to include new factual determinations and new conclusions of law wholly unsupported by the evidence in the record prior to entry of the Original Judgment.

Amended Judgment as the Second Amended Judgment was entered thirty one days after the First Amended Judgment and, thus, one day after the trial court lost its general authority to modify the judgment.[5] *Massman,* 914 S.W.2d at 802.

The net effect of the trial court's actions is that the Initial Judgment and the First Amended Judgment were each rendered a nullity upon entry of a subsequent judgment. Rule 78.07(d). The Second Amended Judgment is the only judgment in this case, and it is, therefore, the judgment appealed from.

### Mootness/Advisory Judgment

In its first two points on appeal, DNR contends the Second Amended Judgment is moot, as the construction permit issued to Gessling had expired and as the Second Amended Judgment was an advisory opinion since it prohibited DNR from issuing Gessling any future permit and ordered DNR to shut down other existing CAFO's within the two mile buffer radius if they threatened those near Arrow Rock.[6] We will review these two points together as they are interrelated.

■ " 'A threshold question in any appellate review is the mootness of the controversy.' " *State ex rel. Acoff v. City of University City,* 180 S.W.3d 83, 84 (Mo. App. E.D.2005) (citations omitted). This court must determine whether the trial court's judgment was a nullity because of the absence of a justiciable controversy.

*Auto. Club Inter–Ins. Exch. v. Nygren,* 975 S.W.2d 235, 238 (Mo.App. S.D.1998). "If there is no justiciable controversy, we lack jurisdiction to consider the appeal and may dismiss *sua sponte.*" *O'Banion v. Williams,* 175 S.W.3d 673, 675 (Mo.App. W.D.2005).

■ DNR contends that the underlying matter which gave rise to MPA's petition for declaratory relief—the construction permit DNR issued to Gessling—became moot when Gessling's permit expired on August 30, 2008, with no construction activity having been undertaken by Gessling. DNR thus contends that the Second Amended Judgment entered after the permit's expiration is a nullity.[7] We agree.

■ "Missouri courts do not determine moot causes of action. 'A cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy.' " *River Fleets, Inc., v. Creech,* 36 S.W.3d 809, 813 (Mo.App. W.D.2001) (citations omitted); *Asher v. Carnahan,* 268 S.W.3d 427, 429–30 (Mo.App. W.D.2008). Missouri courts do not issue opinions that have no practical effect and that are only advisory as to future, hypothetical situations. *River Fleets,* 36 S.W.3d at 813.

A cause of action is rendered moot when an event occurs making it impossible for the court to grant relief. In order to

---

5. Even had the trial court's new "order" addressing existing CAFO's been added to the Second Amended Judgment within thirty days of the First Amended Judgment, Rule 75.01 would have required the trial court to give the parties an opportunity to be heard on the subject. That obviously did not occur here.

6. DNR also filed a motion to dismiss this appeal based on mootness which we have taken with the case. Because the mootness issue is addressed in response to the similar

point relied on raised in DNR's brief, we need not separately rule on the motion to dismiss.

7. DNR also contends the First Amended Judgment was a nullity as moot. Though we agree, we have already determined that the First Amended Judgment was rendered a nullity upon entry of the Second Amended Judgment, and thus the mootness of the First Amended Judgment is no longer an issue.

grant a declaratory judgment, a trial court must have a justiciable controversy before it. 'A justiciable controversy exists where the plaintiff has a legally protectable interest at stake, a substantial controversy exists between the parties with genuinely adverse interests, and that controversy is ripe for judicial determination.' *Id.* (citations omitted). There must be a "presently existing controversy" for "specific relief" not an advisory or hypothetical situation. *Id.* (citations omitted). " 'The question must be ready for judicial decision. **If it is not, the judgment is a nullity.'** " *Auto. Club*, 975 S.W.2d at 238 (citations omitted and emphasis added).

In this case, it is undisputed that the trial court entered the Second Amended Judgment five months after Gessling's permit expired. MPA suggests that the Second Amended Judgment is not moot because Gessling's permit had not expired at the time the Initial Judgment was entered. However, as we have previously noted, the Initial Judgment was rendered a nullity by the First Amended Judgment. The First Amended Judgment (which was itself entered four months after Gessling's permit expired) was rendered a nullity upon entry of the Second Amended Judgment. The Second Amended Judgment orders DNR to revoke a permit that is already expired. The Second Amended Judgment makes findings of fact and conclusions of law projecting harms that will occur upon construction of a CAFO that is not under construction and cannot be constructed given the expired permit. The Second Amended Judgment is moot and is thus a nullity. *Id.*

The trial court attempted to overcome the mootness of both the First Amended Judgment and the Second Amended Judgment by incorporating a new finding of fact in both judgments to the effect that Gessling was threatening to transfer his permit to a corporation he controlled. The trial court then concluded as a matter of law in both judgments that because there was a *possibility* such a transfer *could* permit Gessling to operate another CAFO in the area which could expose the community to harms, the matter was not moot. This was erroneous.

First, the permit expired on August 30, 2008. There was no justiciable controversy before the trial court relating to the expired permit at the time of entry of the Second Amended Judgment, whether the permit was held in Gessling's name or was subject to a purported transfer attempt. Second, the trial court attributes DNR's after-trial motion as the "support" for its new finding of fact and conclusion of law. In that motion as a part of DNR's request that the matter be reopened to address the fifteen mile buffer radius, DNR apprised the trial court that Gessling was attempting to acquire an existing CAFO six miles from the site identified in the expired construction permit—information shared with the trial court to lend credence to DNR's argument that the trial court's Initial Judgment would impact other CAFO's already in existence. From this, the trial court extrapolated a finding that the *construction* permit DNR had issued Gessling was being transferred by Gessling to a corporation he controlled. The trial court's factual finding that Gessling "has petitioned to transfer his *operating* permit which expired on August 30, 2008 to his company name" was not only procedurally improper but was also wholly unsupported by any evidence.[8] Gessling did not have

8. We use the term "evidence" loosely here, as no proper proceeding for the presentation of evidence occurred between the entry of the Initial Judgment and the entry of the First Amended Judgment.

an operating permit for a CAFO. He had only a construction permit and it expired on August 30, 2008. Moreover, the construction permit Gessling was issued was for a site completely unrelated to the site of the existing CAFO Gessling was attempting to acquire. Because the trial court's finding of fact is wholly unsupported by any evidence, the trial court's related conclusion of law declaring that the First Amended Judgment and Second Amended Judgment are thus not moot is erroneous.

Curiously, though MPA denies that the controversy it presented to the trial court by its petition was moot at the time of entry of the Second Amended Judgment in that portion of its brief addressing DNR's first and second points relied on, MPA later concedes mootness of the controversy before the trial court. In response to DNR's point relied on suggesting MPA's failure to exhaust available administrative remedies barred MPA's lawsuit, MPA states: "[s]ince the Gessling permit has expired, it is clear the Administrative Hearing Commission would refrain from addressing Respondents' concerns *since the issue would have become moot during the process.* There thus is no administrative remedy available to Respondents." (Emphasis added.) For the same reason, the matter before the trial court was moot. The Second Amended Judgment is a nullity.

 We are also concerned that many of the trial court's findings of fact and conclusions of law in the Second Amended Judgment went well beyond declaring rights relating to the specific Gessling construction permit and attempted to control future permit issuance and/or the future operation of existing CAFO's. For exam-

ple, the Second Amended Judgment includes an order prohibiting "DNR from issuing any such permits to Gessling to construct or operate a Concentrated Animal Feeding Operation within a distance of a two (2) mile radius" from specified areas. This order is clearly intended to limit DNR's authority with respect to *future* permit applications Gessling may file. Further, the trial court afforded itself continuing jurisdiction over *any* CAFO which threatens Arrow Rock or nearby state parks and historic sites, and prospectively ordered DNR to shut down any such operation. Moreover, the Second Amended Judgment ordered that existing CAFO's within the two mile buffer radius "shall not be entitled to amplify, expand or enlarge." [9] The trial court's orders relating to future Gessling permit applications and to existing CAFO's are advisory, addressing disputes not yet in existence and occurrences of a hypothetical nature. Thus, even if the Second Amended Judgment was not already a nullity because it is moot, the Second Amended Judgment would be a nullity because it is an improper advisory opinion. *River Fleets,* 36 S.W.3d at 813; *Auto. Club,* 975 S.W.2d at 238.

DNR's points one and two are granted. We vacate the Second Amended Judgment as a nullity and order this matter dismissed.

### DNR's Remaining Points on Appeal

Our determination that the Second Amended Judgment is a nullity and an advisory opinion disposes of this case. However, we are compelled to comment on other errors asserted by DNR on appeal

---

9. We have already ruled that this latter order exceeded the trial court's authority as added to the Second Amended Judgment more than

, thirty days after the First Amended Judgment was entered.

which would independently afford grounds to vacate the Second Amended Judgment.

■ First, the Second Amended Judgment decided the rights and duties of non-parties (DNR's point relied on eight). The Second Amended Judgment ordered DNR to revoke Gessling's or his successor's permit and ordered DNR not to issue Gessling or his successor any future permit. Yet Gessling was not named a party to MPA's action. The Second Amended Judgment also exerted continuing jurisdiction over all CAFO's which threaten Arrow Rock or nearby state parks and historic sites in the future and ordered DNR to shut down the offending CAFO's should the trial court in the exercise of its "continuing jurisdiction" later determine a possible, hypothetical harm had become a real harm. Yet, the owners and operators of these unidentified CAFO's were not named as parties. The Second Amended Judgment ordered that all existing CAFO's within the two mile buffer radius established by the trial court must "be conscious of protecting the environment and water" and "shall not be entitled to amplify, expand or enlarge" beyond current operations. Yet, these existing CAFO's are not identified, and their owners and operators were not parties to the proceedings. Farm Bureau's and Cattlemen's efforts to intervene in this case after the Initial Judgment is itself an indication that nonparties believed the trial court's judgment affected their rights.

■ "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings." Rule 87.04. "[T]he presence of an indispensable party is a jurisdictional requirement. Accordingly, when an indispensable party to a declaratory judgment action is not joined in the case, any judgment rendered in that party's absence is a nullity." *Auto. Club*, 975 S.W.2d at 239 (citation omitted). The Second Amended Judgment clearly affected the rights of nonparties. Though MPA argues on appeal that the Second Amended Judgment is a narrow judgment affecting only Gessling's permit, the inaccuracy of this position is readily apparent from a simple reading of the Second Amended Judgment. Moreover, even if MPA's argued view of the Second Amended Judgment could be reconciled with the judgment's plain language, MPA provides no explanation for its failure to join Gessling as a party to its lawsuit when the suit was undertaken for the express purpose of securing revocation of the permit Gessling had been issued. The Second Amended Judgment violates Rule 87.04 and is a nullity.[10]

■ In points five and seven on appeal, DNR argues that MPA failed to exhaust available and required administrative remedies as enacted by the legislature. Chapter 644 describes the procedure for both aggrieved permit applicants and third parties who are aggrieved by the issuance of a permit to appeal to the CWC. It also provides that the final determinations of the CWC are subject to judicial review, *but only after all administrative remedies have been exhausted.* Section 644.071.1. An appeal to the CWC is initiated by filing a petition with the AHC. Section 640.010.1; Mo.Code Regs. Ann. tit.

---

10. DNR also argues that the effect of the Second Amended Judgment was to treat its "deemed" admissions to the requests for admissions as admissions of non-parties in violation of Rule 59.01. Though that is the effect of the Second Amended Judgment, the essential concern is that the trial court entered a declaratory judgment that impaired the rights of non-parties in violation of Rule 87.04.

10, Section 20–6.020(5)(C) (2009). "Generally, parties must exhaust adequate administrative remedies before resorting to an action at law or in equity." *State ex rel. Whiteco Indus., Inc. v. Bowers*, 965 S.W.2d 203, 206 (Mo.App. E.D.1998).

The Second Amended Judgment includes the following conclusion of law:

> An appeal has been filed with the Administrative Hearing Commission from the DNR granting the construction permit to Gessling to construct the two barns and CAFO operation sought by Gessling. Even if the appeal is sustained by the Administrative Hearing Commission, the Plaintiffs are without adequate remedy since the DNR has not within the past five years enforced, complied with or honored any Stay Order rendered by the Administrative Hearing Commission.[11]

The Second Amended Judgment thus concedes that available administrative remedies were being pursued and had not been exhausted as required by section 644.071.1. MPA argues that it was not required to exhaust administrative procedures because no adequate remedy lies through the administrative process. The cases MPA cites in support of this proposition bear no relationship to the circumstances of this case and afford the trial court no authority to dispose of a matter that is the subject of available, unexhausted administrative remedies.

■ In *Whiteco*, a billboard owner secured a preliminary writ of prohibition, the trial court finding Whiteco was not required to secure a building permit from the city because the city's building code and billboard ordinance were preempted by the Missouri Billboards Act. *Id.* at 205. The city argued that because Whiteco had not first sought and been denied a building permit, its action to determine the applicability of the city's building code and billboard ordinance to Whiteco's billboard was not ripe as Whiteco had not exhausted its administrative remedies. *Id.* at 206. The Eastern District disagreed, noting "Whiteco's challenge is to the [city's] authority to impose certain regulations on its billboard construction," an exception to the obligation to exhaust administrative remedies. *Id.* at 206–07. Under the authority of *Premium Standard Farms, Inc. v. Lincoln Township*, administrative remedies need not be exhausted when "the authority of the political subdivision to impose particular regulations is challenged." 946 S.W.2d 234, 237 (Mo. banc 1997)[12] (cited with approval in *Whiteco*, 965 S.W.2d at 206). The case before us does not involve any challenge to DNR's authority to issue permits for CAFO's or any challenge to CWC's authority to hear appeals from DNR's issuance of a permit to construct a CAFO.

■ In *Farm Bureau Town & Country Insurance Co. of Missouri v. Angoff*, 909 S.W.2d 348, 353 (Mo. banc 1995), the Supreme Court concluded that a declaratory judgment action to determine the constitutionality of a statute regulating the insurance industry was premature as the constitutionality claim was necessarily mixed with other claims involving construction and violation of the statute. As a

---

**11.** This "conclusion of law" was drawn from one of the requests for admission the trial court deemed admitted by DNR.

**12.** The other three exceptions to the obligation to exhaust administrative remedies authorized by *Premium* are "[1] no adequate remedy lies through the administrative process ... [3] the validity of the agency rules or the threatened application thereof is at issue, [or][4] the authority of a municipal corporation to enact certain regulations under the statutory enabling acts granting it the power to zone is challenged." 946 S.W.2d at 237.

result, the plaintiff had not exhausted its administrative remedies. *Id.* The court did generally note that "there are exceptional circumstances where declaratory relief may be granted against an agency without exhaustion of the administrative remedies. The exceptions are usually characterized by the inadequacy of the administrative remedy." *Id.* However, the Court declared that the plaintiff had an adequate remedy to preserve its constitutional claims in the administrative proceeding, as those claims could later be raised and addressed in the judicial review portion of the administrative proceeding. *Id.* Here, MPA contends that DNR has failed to honor stay orders issued by the AHC in the past. Yet MPA fails to explain why MPA would be unable to intervene as an aggrieved party empowered to seek enforcement of an ignored stay should that hypothetical scenario occur in connection with a future permit sought by Gessling. The possibility that DNR might ignore an AHC mandate with respect to a Gessling permit is no more than a hypothetical scenario, and MPA cannot establish that it has an inadequate remedy at law to redress DNR's issuance of a future permit to Gessling through the exhaustion of its administrative remedies.

> Until an agency had made a final determination that finds facts, applies the law to those facts, and construes the applicable statutes, it is impossible to know if a subsisting justiciable controversy exists between the agency and the party seeking declaratory relief. Prior to the agency's decision, the controversy remains hypothetical and premature. Declaratory judgment actions should not be resorted to for the purpose of giving advisory opinions.

*Id.* at 353.

Similarly, *State ex rel. Ag Processing, Inc. v. Public Service Commission,* 276 S.W.3d 303 (Mo.App. W.D.2008), offers no support for MPA's contention that it has an inadequate remedy of law warranting abandonment of administrative remedies. In *Ag Processing,* rate payers argued that judicial review should be afforded a PSC rate making decision notwithstanding a pending petition for rehearing because of a concern the adjusted rate would be collected while the petition for rehearing was pending, affording no recourse for the rate payers to recover amounts paid if the rate was later determined excessive. *Id.* at 307. This court disagreed, finding the circumstances did not establish that the rate payers had an inadequate remedy at law warranting relief from the obligation to exhaust administrative remedies. *Id.* at 310–11.

In short, MPA cites no authority for the proposition that its fear that DNR will not abide by a stay order excuses it from exhausting administrative remedies. The trial court exceeded its authority by entertaining MPA's declaratory judgment action given MPA's acknowledged failure to exhaust administrative remedies. The Second Amended Judgment is a nullity as it was entered unlawfully. *Parker v. City of Saint Joseph,* 167 S.W.3d 219, 221 (Mo. App. W.D.2005).

In points three, four, and six on appeal, DNR contends the Second Amended Judgment usurps specific legislative authority established by section 640.710.2 (addressing buffers for CAFO's), assigned by Chapter 643 to the Missouri Air Conservation Commission (addressing odor regulations), and assigned by state and federal clean water laws (which allow and protect the proper use of CAFO waste for agronomic purposes). DNR also argues that the Second Amended Judgment misapprehends the law with respect to DNR's purported duty to protect parks. We express very serious concern that the trial court

has likely overreached with its determinations that are implicated by these legislative schemes.[13] However, we need not decide these issues given our decision that the Second Amended Judgment is a nullity for the multiple reasons herein stated.

## Motions to Intervene

 Farm Bureau and Cattlemen appeal the denial of their motions to intervene and also appeal on the merits.[14] Farm Bureau and Cattlemen were not parties to this proceeding and thus had no standing to appeal on the merits. *State ex rel. Strohm v. Bd. of Zoning Adjustment of Kansas City,* 869 S.W.2d 302, 303 (Mo. App. W.D.1994). However, given the circumstances, we have elected to treat the briefs of Farm Bureau and Cattlemen as amicus briefs pursuant to Rule 84.05(f), and have considered the arguments advanced by these nonparties accordingly. Given our nullification of the Second Amended Judgment, we need not address the trial court's denial of Farm Bureau's or Cattlemen's motions to intervene.

## Conclusion

The subject matter of MPA's petition was moot at the time the trial court entered the Second Amended Judgment. There was no justiciable controversy warranting the entry of a declaratory judgment or a writ of mandamus, rendering the Second Amended Judgment an improper advisory opinion. The Second Amended Judgment improperly declared and affected the rights of nonparties not before the court. The Second Amended

Judgment improperly addressed matters which were the subject of unexhausted administrative remedies. For each and all of these reasons, the Second Amended Judgment is a nullity. The Initial Judgment and the First Amended Judgment were rendered nullities by the entry of subsequent judgments and no further action need be taken by this court to vacate those judgments. We vacate the Second Amended Judgment and order the underlying matter dismissed with costs assessed to MPA.

All concur.

---

13. Though nearly all of the trial court's conclusions of law are "supported" by a request for admission the trial court deemed DNR to have admitted, we would not be bound by DNR's deemed admissions, and would have the authority to review the trial court's conclusions of law *de novo.*

14. MPA filed motions to strike points relied on in Farm Bureau's and Cattlemen's briefs that went to the merits of the judgment and beyond the denial of their respective motions to intervene. Both motions were taken with the case but are rendered moot by our decision.